IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
(HEARD AT CHATTANOOGA)

FILED

December 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

| | |
|---|---|
| STATE OF TENNESSEE, | ( **Filed**: December 22, 1997 |
| | ( |
| Plaintiff-Appellee, | ( |
| | ( Bradley Criminal |
| | ( |
| v. | ( Hon. Mayo L. Mashburn, |
| | ( Judge |
| | ( |
| DAVEY JOE VINEYARD | ( |
| AND JIMMY LEE COCKBURN, | ( |
| | ( |
| Defendants-Appellants. | ( S.Ct. No. 03S01-9612-CR-00120 |

For Plaintiff-Appellee:

John Knox Walkup
Attorney General & Reporter
Nashville, Tennessee

Michael E. Moore
Solicitor General
Nashville, Tennessee

Karen M. Yacuzzo
Assistant Attorney General
Nashville, Tennessee

Jerry N. Estes
District Attorney General
Athens, Tennessee

Joseph A. Rehyansky
Assistant District Attorney General
Cleveland, Tennessee

For Defendants-Appellants:

Kenneth L. Miller
Logan, Thompson, Miller,
Bilbo, Thompson & Fisher, P.C.
Cleveland, Tennessee

# O P I N I O N

AFFIRMED.                                                    DROWOTA, J.

In this appeal we are asked to determine whether under Article I, Section 7

of the Tennessee Constitution a stop based upon probable cause is valid irrespective of the subjective motivations of the police officer making the stop. The defendant concedes that under the Fourth Amendment to the federal constitution, the subjective motivations of police officers are irrelevant so long as the stop is otherwise based upon probable cause.[1]  However, the defendant asks us to hold that, in this context, the Tennessee Constitution's prohibition against unreasonable searches and seizures is more stringent than the Fourth Amendment to the United States Constitution.

The Court of Criminal Appeals recognized that the state constitution may grant greater protection from unreasonable searches and seizures than that provided by the federal constitution,[2] but found that the protection afforded in this context is the same under both constitutions.  Therefore, the Court of Criminal Appeals affirmed the trial court's denial of the defendant's motion to suppress.

We conclude that, in this context, the protection afforded by Article I, Section 7 of the Tennessee Constitution is co-extensive with the protection afforded by the Fourth Amendment to the United States Constitution.  Accordingly, a stop based upon probable cause is valid under the Tennessee Constitution, without regard to the actual subjective motivations of police officers.  Accordingly,

_____

[1]United States v. Whren, __U.S. __, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

[2]State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989).

the judgment of the Court of Criminal Appeals is affirmed.[3]

## FACTUAL BACKGROUND

Both defendants, Davey Joe Vineyard and Jimmy Lee Cockburn, pled guilty to possession of more than 10 pounds of marijuana for resale. Cockburn also pled guilty to possession of drug paraphernalia and nolo contendere to speeding. Pursuant to Rule 37(b)(2)(i),[4] Tennessee Rules of Criminal Procedure, the defendants reserved as a dispositive question of law the trial court's refusal to suppress the incriminating evidence discovered in the motor vehicle occupied by them when they were arrested.

The only witness on behalf of the State at the suppression hearing was Detective Gates, a narcotics officer with the City of Cleveland. Sometime prior to the morning of May 6, 1994, Detective Gates said that he had received information from an anonymous informant that a vehicle occupied by the defendants would be traveling north on Interstate 75 ("I-75"). The vehicle would pass through Bradley County en route to an undisclosed location, where the defendants would obtain a load of marijuana and return, later that day, through

---

[3]Oral argument was heard in this case in Chattanooga, Hamilton County, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[4]Rule 37(b)(2)(i), Tenn. R. Crim. P., provides in pertinent part as follows:
   (b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: (2) Upon a plea of guilty or nolo contendere if: (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case. . . .

Bradley County bound for Georgia.

At approximately 7:00 a.m., on May 6, 1994, Detective Gates, along with Detective Queen, of the narcotics squad of the Cleveland city police department, were conducting drug interdiction surveillance of traffic on I-75. Between 8:00 and 8:30 a.m., Gates saw the defendants' vehicle, a pickup truck, as it proceeded northbound. He notified Officer Queen that he had identified the vehicle, and he then crossed I-75 to a position from which he could watch the southbound traffic. At approximately 9:30 a.m., the vehicle passed Gates' position traveling south. Driving unmarked police vehicles, Gates and Queen followed the defendants. Gates testified he had no intention of stopping the defendants' vehicle at that time but was instead waiting for the driver to commit a traffic violation. Gates said he paced the defendants' vehicle at about 75 miles per hour, ten miles per hour faster than the posted speed limit. Gates also observed the defendants' vehicle move from the left lane to the right lane without displaying a turn signal, and about one mile farther, the vehicle pulled back into the left lane without a signal. At that point, Gates radioed the head of the narcotics squad, Lieutenant Wilcoxin, who, accompanied by Officer Young, was stopped in a marked police car in the highway median some distance south. Gates told Wilcoxin they were planning to stop the defendants at Exit 25 and asked him to check the speed of the defendants' vehicle by radar when it passed his location. Wilcoxin attempted to check the speed by radar, but because of the traffic, was unable to do so. When the defendants' vehicle passed by the marked police car, Gates saw Vineyard

looking back at it.

Wilcoxin pulled onto the highway and turned on his blue lights. As the defendants' vehicle drove to the side of the highway at Exit 25, Gates saw the passenger, Vineyard, "moving about" in the vehicle "doing something with his hands." Gates gave this account of the stop:

> Due to his actions, when we stopped, they was ordered to put their hands in view where we could see them. They did not comply with the first order. At this time weapons were drawn. I believe three, three of the officers, myself, Queen and Young did pull our weapons as we did approach the vehicle. They were ordered to keep their hands up . . . As we approached with the windows down we had a strong odor of marijuana about the vehicle. It was real, real strong.

Detective Gates testified that the defendants got out with their hands on the rail of the truck and told the officers there were no weapons or drugs in the truck. Wilcoxin then asked, "Do you give us consent to search?" to which Cockburn answered, "Yes go ahead." The marijuana, which was the object of the motion to suppress, was located in the cab of the truck only partially concealed in a plastic bag. The vehicle was stopped approximately seven miles from the point where the officers began following it.

Detective Gates testified that he had pursued the defendants' vehicle "with the expectation and hope that there would be a traffic violation to give . . . a reason to pull the vehicle over." "Drug interdiction" consists of surveillance of the highway and the stop of certain vehicles for traffic violations so that the officers could observe the occupants and the contents of the vehicles and try to obtain

permission to search the vehicles for illegal drugs. He stated that he does not stop all traffic violaters, and, at times, uses a "courier profile" for selecting the vehicles to be stopped. Detective Gates acknowledged that uniformed officers on routine patrol usually do not try to search vehicles stopped for traffic violations.

The defendants moved to suppress the evidence seized as a result of the stop, and after considering the proof, the trial judge denied the motion. The Court of Criminal Appeals affirmed the trial court's decision, concluding that the stop was lawfully based upon probable cause to believe that a traffic violation had occurred. Thereafter, we granted permission to appeal to consider this important question of constitutional law, and for the reasons that follow, now affirm the decision of the Court of Criminal Appeals.

## PRETEXTUAL STOPS

The Fourth Amendment [5] to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." Similarly, Article I, Section 7 of the Constitution of Tennessee provides "that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures. . . ." The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy

---

[5]The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).

In this appeal, the defendants urge this Court to hold that the evidence against them should have been suppressed as the fruit of an illegal pretextual stop and search of their automobile. The defendants assert that because the officers initiating the stop were subjectively seeking to discover drugs as the result of an anonymous tip, rather than enforce the traffic laws, the stop was pretextual. They ask the Court to hold that pretextual stops violate Article I, Section 7 of the Tennessee Constitution even when, based upon the facts and circumstances, the police officer has probable cause to believe that the defendant has violated the law. The defendants concede that the stop in this case does not violate the Fourth Amendment. Their only insistence is that this Court should interpret Article I, Section 7 as providing greater protection than the Fourth Amendment as interpreted by the United States Supreme Court in United States v. Whren, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The State responds that this Court should affirm the judgment of the Court of Criminal Appeals and hold that the Tennessee Constitution provides no greater protection than the Fourth Amendment as interpreted in Whren.

Though state courts are free to interpret their respective state constitutional provisions as affording greater protections than the "base line" level of protection

guaranteed by the federal constitution, this Court has previously stated that "Article I, Section 7 is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997), quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968). Federal case law interpreting the Fourth Amendment is to be regarded as "particularly persuasive" when the scope and intent of Article I, § 7 is at issue. Id. Indeed, when interpreting the state constitutional provision, this Court has departed from federal precedent only when: (1) adopting federal Fourth Amendment standards would require overruling "a settled development of state constitutional law;" and (2) when linguistic differences justify distinct interpretations of state and federal constitutional provisions. State v. Jacumin, 778 S.W.2d 430, 435-36 (Tenn. 1989) (probable cause standard for evaluation of affidavit); State v. Lakin, 588 S.W.2d 544, 549, n. 2 (Tenn. 1979) (open fields doctrine).

Without question, the temporary detention of individuals during the stop of a vehicle by police, even if only for a brief period and for a limited purpose, constitutes a "seizure" which implicates the protection of both the state and federal constitutional provisions. Whren, ___ U.S. at___, 116 S. Ct. at 1772; Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); State v. Pully, 863 S.W.2d 29, 30 (Tenn. 1993). As a general rule, however, the stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred. Id.

Moreover, in Whren, the United States Supreme Court unanimously rejected the proposition "that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Id., ___ U.S. at ___, 116 S.Ct. at 1774. Instead, the Court held that a stop based upon probable cause to believe that provisions of the traffic code have been violated is constitutionally permissible, despite the subjective motivation of the police officer making the stop.[6] Whren, ___ U.S. at ___, 116 S. Ct. at 1774.

In that case, plainclothes vice-squad officers patrolling a "high drug area" became suspicious when they observed the occupants of a truck stopped at an intersection. Upon following the truck, the officers observed several traffic violations. When the truck stopped at a traffic light, one officer approached the vehicle, identified himself as a police officer, and directed the driver to put the vehicle in park. As he approached the vehicle, the officer observed Whren holding two large plastic bags of crack cocaine. The occupants of the vehicle, including Whren, were arrested and quantities of illegal drugs were seized.

The United States Supreme Court rejected Whren's assertion that suppression of the evidence was required because the stop was pretextual. The Court found the stop valid under the Fourth Amendment because the officers executed the stop only after developing probable cause to believe that the driver

---

[6]The Court noted that selective enforcement based on impermissible criteria would raise equal protection issues. Whren, _____ U.S. at _____, 116 S. Ct. at 1774.

of the vehicle had violated the traffic code.  The Court held that "[s]ubjective intentions play no role in ordinary, probable cause Fourth Amendment analysis."  Whren, __ U.S. at ___, 116 S.Ct. at 1774.  The existence of "probable cause to believe that the petitioners had violated the traffic code . . . rendered the stop reasonable under the Fourth Amendment."  Id at 1777.

While acknowledging that earlier opinions contained language expressing "disapproval of police attempts to use valid bases of action against citizens as pretexts for pursuing other investigatory agendas," the Court emphasized that each of those prior statements appeared in a case addressing potential abuse of a police practice that did not require probable cause for its initiation, for example, an inventory search "used as a ruse . . . to discover incriminating evidence," Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990), or a warrantless administrative search undertaken as "a 'pretext' for obtaining evidence of violation of . . . penal laws."  New York v. Burger, 482 U.S. 691, 716-717, n. 27, 107 S.Ct. 2636, 265, n. 27, 96 L.Ed.2d 601 (1987).  The Court explained that none of those earlier statements endorsed the principle "that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred."  Whren, ___ U.S. at ___, 116 S.Ct. at 1772.  The danger to individual liberty and privacy posed by police abuses discussed in the earlier decisions is not present when the police action at issue is supported by probable cause.  Despite the subjective motivations of police, the "essential purpose" of the Fourth Amendment, imposition of a "standard of

reasonableness upon the exercise of discretion by . . . law enforcement agents in order to safeguard the privacy and security of individuals against arbitrary invasions,"[7] is entirely fulfilled when a traffic stop is initiated because the officers have probable cause to believe that a violation of the law has been committed. The probable cause requirement constrains the exercise of police discretion and safeguards the citizenry against arbitrary intrusions. Whren, ___ U.S. at ___, 116 S.Ct. at 1777.

The defendants urge us to reject the analysis of the Supreme Court in Whren and in support of their claim, the defendants rely upon prior decisions of this Court which they claim condemn pretextual stops.

In Robertson v. State, 184 Tenn. 277, 198 S.W.2d 633 (1947), highway patrol officers, pretending a driver's license inspection, stopped the defendant's vehicle because the passenger "looked back through the rear window in a way that made [the officers] suspicious." Id. at 634. The officers had no information that the occupants were involved in any illegal activity, and they observed no violation of the traffic code; consequently, they did not have probable cause. Upon stopping the vehicle, the officers observed illegal liquor in the rear seat of the vehicle. The Court held, "This Court will not permit an evasion of the requirements of the law with regard to search warrants through the device, pretext, or subterfuge of a pretended examination of a driver's license," id. at 635, where

---

[7]Prouse, 440 U.S. at 654, 99 S.Ct. at 1396 (citations and internal quotations omitted) .

"no impropriety in the driving of the defendants' car" is observed. Id. at 636.

In Cox v. State, 181 Tenn. 344, 181 S.W.2d 338 (1944), highway patrol officers followed a vehicle operated by the defendant from Davidson County, where the possession of liquor was legal, into Sumner County, where possession was not legal. The officers believed the vehicle was owned by another person whom they suspected was involved in the illegal transportation of liquor. As in Robertson, they stopped the vehicle and asked to see the defendant's driver's license. And, as in Robertson, the officers observed liquor in the front seat of the vehicle. This Court held the suspicionless stop was a violation of the defendant's constitutional rights against unreasonable seizure and reversed the conviction.

Contrary to the defendants' assertions, the decisions in Robertson and Cox did not condemn pretextual stops. Instead, those decisions condemned intrusions that were not supported by probable cause or any level of individualized suspicion. Such intrusions, as the United States Supreme Court recognized in Whren, allow unfettered police discretion and pose the greatest risk of official abuse. Robertson and Cox also do not support the proposition that the state constitution is more protective, in this context, than the federal constitution. Indeed, those cases would have been decided the same under federal law. In Prouse, the United States Supreme Court held that a suspicionless traffic stop initiated by a police officer on a "roving patrol" aimed at detecting unlicensed drivers is constitutionally impermissible. The Court stated "except in those situations in which there is at

-12-

least articulable and reasonable suspicion [that a motorist is unlicensed] or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his license and the registration of the automobile are unreasonable under the Fourth Amendment." Id., 440 U.S. at 663, 99 S.Ct. at 1401 (emphasis added). Since the officers initiating the traffic stops in Robertson and Cox did not purport to have reasonable suspicion nor probable cause, those stops were not valid under either the federal or state constitution.

Therefore, under this Court's prior decisions, pretext is not the determinative factor in evaluating the constitutionality of a traffic stop. For example in McBride v. State, 200 Tenn. 100, 290 S.W.2d 648 (1956), a highway patrol officer "had some general information that the defendant was transporting liquor from [Dyer County, where possession was legal] into Henry County [where possession was not legal] over Highway 54 . . . [in] a green Hudson automobile." While traveling on Highway 54 in Henry County, a highway patrol officer met the defendant driving a green Hudson. In response to a radio call from the highway patrol officer, a Paris city police officer undertook to intercept the defendant as he entered the city of Paris. When the defendant failed to stop at a road block, a high speed chase ensued and ended on a dead-end street. The defendant was arrested, and the officers observed liquor in the rear seat. This Court refused to suppress the evidence. The Court found that had the city officer intercepted the defendant's vehicle, an arrest at that point would have been unlawful, but, held

-13-

that the defendant's violation of the traffic code committed during the chase justified the defendant's arrest and the officer's seizure of illegal liquor in plain view. See also Batchelor v. State, 213 Tenn. 649, 378 S.W.2d 751, 752 (1964). Therefore, despite the police officer's subjective motivations, this Court upheld the constitutional validity of the stop which was based upon probable cause that the defendant had violated the traffic code.

Adoption of the Supreme Court's interpretation of the Fourth Amendment in Whren would not require overruling "a settled development of state constitutional law." Moreover, there are no linguistic differences which, in this context, justify distinct interpretations of the state and federal constitutional provisions. Accordingly, we conclude that probable cause justifies a traffic stop under Article I, Section 7 of the Tennessee Constitution without regard to the subjective motivations of police officers.

Applying that rule to the facts in this case, it is clear that the trial court and Court of Criminal Appeals appropriately denied the defendants' motion to suppress. Although the subjective motivation for the stop may have been the officers' desire to search for illegal drugs, the stop was not accomplished until the detectives had personally observed at least three violations of the traffic laws, which constitutes probable cause justifying the stop. Since the stop was based upon probable cause, its constitutional validity was not impaired by the officers' subjective motivations.

## CONCLUSION

Because we conclude that Article I, Section 7 of the Tennessee Constitution does not preclude stops supported by probable cause, despite the subjective motivations of police officers, the judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendants' motion to suppress is affirmed.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.,
Reid, Birch and Holder, JJ.