IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

# STATE OF TENNESSEE v. FRED ARTHUR STIER

**Appeal from the Circuit Court for Henry County**
**No. 12812     Julian P. Guinn, Judge**

---

**No. W1999-600-CCA-R3-CD - Decided April 7, 2000**

---

The Defendant, Fred Arthur Stier, was charged with violation of the "light law"; resisting stop, frisk, halt, arrest, or search; possession with intent to manufacture, deliver, or sell a controlled substance; possession of a controlled substance; and possession of drug paraphernalia. Upon dismissal of the remaining charges, the Defendant pleaded guilty to resisting stop, frisk, halt, arrest, or search and to possession with intent to manufacture, deliver, or sell a controlled substance, reserving a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(i). The certified question presented to us is whether the trial court erred in overruling the Defendant's motion to suppress the evidence obtained against him as the result of an unlawful stop and frisk. The State concedes on appeal that the trial court erred in overruling the Defendant's motion to suppress. We agree; accordingly, we reverse the Defendant's convictions and dismiss the case.

**Tenn. R. App. P. 3; Appeal of Certified Question; Judgment of the Trial Court is Reversed; Case Dismissed**

WELLES, J., delivered the opinion of the court, in which TIPTON, J., and LAFFERTY, SR.J., joined.

Matthew M. Maddox, Huntingdon, Tennessee for the appellant, Fred Arthur Stier.

Paul G. Summers, Attorney General and Reporter, Mark E. Davidson, Assistant Attorney General, Robert "Gus" Radford, District Attorney General, for the appellee, State of Tennessee.

## OPINION

Two police officers with the Henry County Sheriff's Department testified at the suppression hearing. Officer Scott Lynn Wyrick stated that on February 20, 1998, he was working as a narcotics officer with the Sheriff's Department. He said that one or two days before February 20, he received information from a "concerned citizen" that the Defendant "would possibly be carrying some cocaine to the Henry County area" on February 20. The informant told Officer Wyrick the type of car the Defendant would be driving, the license number of that car, an approximate time that the Defendant would be in Henry County, and that the Defendant would be coming from Antioch, Tennessee. Officer Wyrick provided very little information about the informant other than that the

informant was a "concerned citizen" as opposed to someone from the "criminal milieu." He said that the informant contacted him with the information and that he met with the informant in person. He did not ask the person why he or she was providing the information. He said that he had previously received information about an alleged drug dealer from this informant, but he did not follow up on the information.

Officer Wyrick testified that based on the information from the informant, he set up surveillance and located the Defendant at about 1:00 or 1:30 in the afternoon in Paris, Tennessee on February 20, 1998. The Defendant was parked at the Union Planters Bank when he was located. Officer Wyrick said that he did not think he had probable cause to obtain a search warrant to search the Defendant's car, so he told the other officers to observe the Defendant when the Defendant left the parking lot and to pull the Defendant over if he committed a traffic violation. Officer Wyrick was informed by Officer Archie that the Defendant committed some traffic violations, but he did not personally see the Defendant violate any traffic laws.

Officer Donnie Archie testified that he was employed in the uniform patrol division of the Henry County Sheriff's Department on February 20, 1998. He received information from Officer Wyrick to stop the Defendant if the Defendant committed a traffic violation. He was also informed by Officer Wyrick that the Defendant was possibly bringing drugs into Henry County from Antioch. He said that he observed the Defendant "make an illegal right turn" and that one of the bulbs in the Defendant's left tail light was inoperative. He explained that the street upon which the Defendant was driving was divided into a left turn lane, a lane that went straight, and a lane to turn right. The Defendant was in the lane that went straight, but he turned right from that lane at the intersection. The Defendant did signal briefly before turning.

Officer Archie testified that he stopped the Defendant based only on these traffic violations. He asked the Defendant whether he had any weapons on his person and told the Defendant that he "needed to pat him down" for safety. He said that did not have any reason to think that he might have been in danger, but he "pat[s] down everybody that [he] ask[s] to get out of the car." When questioned about this procedure by the trial judge, Officer Archie said that he would have patted down a seventy-five year old grandmother or grandfather if he or she had committed the same traffic violation.

Officer Archie said that while he was "patting [the Defendant] down," he felt a bulge on the inside of one of the Defendant's socks. At this point, the Defendant attempted to run from Officer Archie. The Defendant was apprehended and placed under arrest. Drugs were found in the Defendant's sock and in the vehicle.

After hearing this testimony, the trial court ruled that "Officer Wyrick had reasonable and trustworthy information from a responsible citizen that a felony was going to be committed and had the details of the felony to the extent that he could have obtained a search warrant. . . . He could have stopped the vehicle at the bank and searched the man because he had probable cause." The trial court thus found that the stop of the Defendant's vehicle and subsequent search of the Defendant

were lawful because the officers had probable cause to believe that the Defendant was transporting drugs. With respect to the traffic stop, the trial judge stated,

> Now, the traffic stop itself, there's nothing in the world that says you can search a person's socks for making a wrong right-hand turn and not having a traffic [sic] light. And I suspect that if that's what the policy is now we're getting ready to get a bunch of lawsuits here. The first time they grab somebody's granny and search her socks, well, she's going to file a lawsuit. And that's not the law, and, to my knowledge, it's never been the law. You don't arrest people for this, you give them a traffic citation. A traffic stop doesn't have anything to do with this lawsuit. The man had probable cause, he had a good search. Let the motion to suppress be overruled.

On appeal, the Defendant argues that the trial court erred in finding the officers had probable cause to stop the Defendant and search his person and his car. He argues that the officers did not have reasonable suspicion of criminal activity to justify an investigatory stop of the Defendant based on the informant's tip, that the officers did not have probable cause to believe the Defendant committed a traffic violation, and that they did not have reasonable suspicion that the Defendant was armed to justify the "pat-down" of the Defendant. The State asserts that it is not necessary to address whether the informant's tip provided the officers with probable cause or reasonable suspicion to stop the Defendant because Officer Archie testified that he stopped the Defendant based only on the alleged traffic violations. The State then concedes that the officer did not have probable cause to believe the Defendant committed a traffic violation or reasonable suspicion to believe the Defendant was armed and dangerous; thus, the seizure and subsequent search of the Defendant were unlawful. We agree. We also conclude that the officers did not have probable cause or reasonable suspicion to seize the Defendant's vehicle based on the informant's tip.

When reviewing the grant or denial of a motion to suppress, we accept the trial court's findings of fact unless the evidence preponderates otherwise. See State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, the application of the law to the facts as found by the trial court is a question of law which the appellate court reviews de novo. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993)). Because the facts in this case are undisputed, we are called upon only to address questions of law. As such, our review of the decision below will be de novo.

Both the United States and Tennessee Constitutions protect against unreasonable searches and seizures. See U.S. Const. amend IV; Tenn. Const. art. 1, § 7. Under both the United States and Tennessee Constitutions, a search or seizure conducted without a warrant is presumed unreasonable. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). Therefore, evidence seized as a result of a search or seizure conducted without a warrant must be suppressed unless the State proves by a preponderance of the evidence that the search was reasonable. See id.

The stop of an automobile and the detention of its occupants constitutes a seizure, even if the purpose of the stop is limited and the detention is brief. See Wren v. United States, 517 U.S. 806,

809-10 (1996); Delaware v. Prouse, 440 U.S. 648, 563 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 556-58 (1976); State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). Thus, the Defendant in this case was seized by Officer Archie when his automobile was stopped, thereby calling into play the protections of the United States and Tennessee Constitutions. However, a police officer may stop or "seize" an automobile without a warrant if the officer has probable cause to believe that a criminal offense or a traffic violation has occurred. See Wren, 517 U.S. at 810; Prouse, 440 U.S. at 655, 659; Vineyard, 958 S.W.2d at 734. If the officer has probable cause to believe that a violation of the traffic code has occurred, the seizure will be upheld even if the stop is a complete pretext for the officer's subjective motivations in making the stop. See Wren, 517 U.S. at 813-17; Vineyard, 958 S.W.2d at 734-35. A police officer may also seize an automobile and question its occupants if the officer has reasonable suspicion, based on specific and articulable facts, that the occupants have been involved in or are about to be involved in criminal activity. See Ornelas v. United States, 517 U.S. 690, 693 (1996); Terry v. Ohio, 392 U.S. 1, 30 (1968); State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998); State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997).

The facts forming the basis for the officer's probable cause or reasonable suspicion need not rest upon the personal knowledge or observation of the officer. See Adams v. Williams, 407 U.S. 143, 147 (1972); Simpson, 968 S.W.2d at 780. However, when a stop is based on the tip of an informant, the danger of false reports becomes a concern. See State v. Pulley, 863 S.W.2d 29, 31 (Tenn. 1993). Consequently, we must apply tests for determining the reliability of an informant's tip. Id. Under Tennessee law, to establish probable cause based on an informant's tip, there must be a showing of both the informant's credibility and his or her basis of knowledge. See State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989). Although reasonable suspicion "requires 'a lower quantum of proof than probable cause,'" these Jacumin factors are useful in considering the reliability of an informant's tip for establishing reasonable suspicion as well as probable cause. Pulley, 863 S.W.2d at 31. Our supreme court has maintained that "while independent police corroboration could make up deficiencies in either prong, each prong represents an independently important consideration that 'must be separately considered and satisfied in some way.'" Jacumin, 778 S.W.2d at 436.

In considering the reliability of informant tips, the supreme court has distinguished between information provided by a known citizen informant and information provided by a criminal or professional informant. See State v. Stevens, 989 S.W.2d 290, 293 (Tenn. 1999); State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). Information provided by a citizen or bystander witness who is known to the officer is presumed to be reliable; thus, the State is not required to establish either the informant's credibility or the reliability of the information. See Stevens, 989 S.W.2d at 293. This is because an ordinary citizen who reports a crime does so with an intent to aid the police in law enforcement due to his or her concern for society or for his or her own safety; on the other hand, a criminal informant generally reports crimes in exchange for some type of consideration from the police. See id. at 294; State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998). Notwithstanding, for an informant to be considered a citizen informant as opposed to a criminal informant, there must be some evidence of the informant's status or relationship to the events or persons involved, indicating the informant's basis of knowledge. See Luke, 995 S.W.2d at 637. As our supreme court noted in State v. Stevens with respect to informants who report drug crimes,

-4-

> [A]s a general proposition it is an informant from the criminal milieu rather than a law-abiding citizen who is most likely to be present under such circumstances. This is not to suggest that a person giving information about the location of narcotics may *never* qualify as a citizen-informer, for it is sometimes possible to show with particularity how a law-abiding individual happened to come upon such knowledge. Rather, the point is that in such a case it should not be deemed sufficient that the police have alleged in a rather conclusory fashion that the person was "an individual who is neither a paid nor habitual informant," "a responsible citizen of utmost character and integrity" or "a reputable member of the community." Perhaps a more particularized showing of the law-abiding nature of the person supplying the information will suffice.

Stevens, 989 S.W.2d at 294-95 (emphasis in original) (quoting 2 Wayne R. LaFave, Search and Seizure § 3.4(a) (3d ed. 1996)).

The evidence here contains only conclusory allegations that the informant was a "citizen informant" who was not from the "criminal milieu." Officer Wyrick testified that the informant provided information because he was concerned for his safety, but the officer did not explain how the informant was related to the events or parties. Under Stevens, we do not believe this is enough evidence for the informant to be considered a citizen informant. Also, as the supreme court noted in Stevens, a citizen informant "'usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied.'" Id. at 294 (quoting State v. Smith, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993)). Officer Wyrick testified that this informant had provided information about a drug dealer in the past, even though the officer did not follow up on the information. This goes against the finding that the informant was merely a concerned citizen who happened upon some information about drug transactions. Therefore, we may not presume the informant's credibility or the reliability of the information, and we must apply the test for reliability espoused by the supreme court in Jacumin. See 778 S.W.2d at 436.

We first find that there is no proof of the informant's credibility or his basis of knowledge. The only testimony was that the informant was a "concerned citizen." Since the informant cannot be considered a citizen informant, this is not sufficient to satisfy the requirements of Jacumin. See Stevens, 989 S.W.2d at 294-95. Recognizing that deficiencies in either of the two prongs of the Jacumin test may made up by independent police corroboration, see Jacumin, 778 S.W.2d at 436; Pulley, 863 S.W.2d at 31, we further find that there was insufficient corroboration in this case to make up for the deficiencies. Officer Wyrick testified that the informant told him the Defendant would possibly be coming from Antioch to Henry County with drugs, along with the approximate time the Defendant would be in Henry County, the Defendant's make and model of car, and the license number on the car. Officer Wyrick located the Defendant in the car as described. These facts are substantially similar to those in State v. Coleman, 791 S.W.2d 504 (Tenn. Crim. App. 1989), in which we found no probable cause or reasonable suspicion to stop the defendant's vehicle.

In Coleman, an informant, whom the officer "had previously arrested," told the officer that between 2:00 and 2:30 p.m. on August 10, a white female between the ages of twenty-five and thirty five whose name was Carla would be en route to Robertson County from Davidson County on Highway 431 South. Id. at 504. The informant further stated that Carla would be driving an older model black Monte Carlo, that she would have several pounds of marijuana, and that she would ultimately drive to a location on Washington Road. Id. The informant did not explain how he knew this information. Id. The officer instructed other officers to stop any vehicle meeting the description given. Id. Around 2:30 p.m. on August 10, after about forty-five minutes of surveillance, an officer observed an older model black Monte Carlo traveling from Davidson County to Robertson County on Highway 431 South. Id. The officer ran a check on the license plate, learned the plates were registered in the name of Carla Coleman, and then initiated a stop. Id. at 504-05. In holding that the officer did not have probable cause or reasonable suspicion to stop the vehicle, we stated,

> We know of no attempt made by the officers to verify the credibility of their informant or the reliability of the information provided. The detention took place before the officers had an opportunity to corroborate Washington Road in Robertson County as the point of final destination. There was no significant period of surveillance before the deputy made the investigative stop. That the car was in fact registered in the name of Carla Coleman, innocent in and of itself, was the only independently acquired fact supporting the tip's veracity.

Id. at 506.

Here, as in Coleman, the facts corroborated were innocent in and of themselves. The Defendant was in his car in Henry County. That the Defendant owned a particular vehicle and would be in Henry County on a particular day were facts readily discoverable. Similar facts could be discovered about many of the other people who were in Henry County that day. Without more information about the informant's credibility or basis of knowledge concerning drug activity, this was not enough evidence to establish either probable cause or reasonable suspicion to the make the stop to search for drugs. Thus, the trial court erred in finding that the officer's stop was lawful based on the informant's tip.

We now turn to the traffic violations. Officer Archie testified that he stopped the Defendant because the Defendant committed two traffic violations. It is clear that if Officer Archie had probable cause to believe the Defendant committed a traffic violation, he could stop the Defendant for the violation even if his subjective intention was to investigate drug transportation. Wren, 517 U.S. at 813-17; Vineyard, 958 S.W.2d at 734-35. However, the State concedes that the testimony did not establish that Officer Archie had probable cause to believe the Defendant committed any traffic violations.

Officer Archie testified that one of the Defendant's brake lights on the left side was inoperable, thereby indicating that the Defendant had more than one brake light on each side and that at least one of the brake lights on each side was working. Officer Archie characterized this as a violation of the "light law." The relevant statute is Tennessee Code Annotated § 55-9-402(b)(1)-(3),

-6-

which requires all motor vehicles to be equipped with one red tail lamp and one red "stoplight" on each side of the vehicle, requires the "stoplight" to be visible upon the depression of the brake, and provides that the "stoplight" may be incorporated with the tail lamp. Because it appears the Defendant had at least one brake light visible on each side of his car, he was not in violation of this statute.

Curiously, the Defendant was not charged with a violation of the relevant "light law." Instead, he was charged with violating Tennessee Code Annotated § 55-9-401(a), which provides as follows:

> Every vehicle <u>other than a motor vehicle</u>, when traveling upon a state highway, state aid road or other road, highway or street . . . shall be equipped with a light attached to and on the upper left side of such vehicle, capable of displaying a light visible five hundred feet (500') to the rear of such vehicle under ordinary atmospheric conditions, and <u>such light shall be displayed during the period from one-half (½) hour after sunset to one-half (½) hour before sunrise</u> and at all other times when there is not sufficient light to render clearly discernible any person on the road or highway at a distance of two hundred feet (200') ahead of such vehicle.

(Emphasis added). Because the Defendant was driving a motor vehicle and because he was driving in mid-afternoon, this statute is clearly inapplicable.

Officer Archie also testified that the Defendant made an improper right turn from the center lane. However, the State failed to establish what traffic law this turn violated. We have found no law which is clearly applicable. Therefore, we must hold that the State failed to meet its burden of establishing by a preponderance of the evidence that the police officers had probable cause to believe the Defendant had committed a traffic violation which would have justified the stop of the Defendant's vehicle. Accordingly, we conclude that the stop of the Defendant's vehicle was not justified by either probable cause or reasonable suspicion, thereby making the stop unlawful under the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution.

Because we hold that the stop of the Defendant's vehicle was unlawful, we need not address the actual search of the Defendant. Notwithstanding, we will briefly discuss the "pat-down" of the Defendant after the seizure. Officer Archie testified that he had no reason to believe either that he was in danger from the Defendant or that the Defendant was armed, but he frisked the Defendant because that is his standard procedure. He said that he would frisk a seventy-five year old grandmother who committed the same traffic violation. In <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the Supreme Court approved the limited and temporary seizure of a person for questioning and for a "pat-down" for weapons if an officer has a "reasonable suspicion" that the person is armed and dangerous. <u>Id.</u> at 30. <u>Terry</u> did not approve a "pat-down" for weapons as standard procedure. <u>See id.</u> Assuming for the sake of argument that Officer Archie did have probable cause to believe the Defendant committed a traffic violation, that still did not give him a reasonable suspicion that the Defendant was armed and dangerous. If the Defendant had consented to a search upon questioning

by the officer, that would present a different issue; but where the only lawful reason to stop a vehicle is because of a traffic violation, there must be other circumstances giving rise to a reasonable suspicion that the occupant is armed and dangerous before a "pat-down" for weapons will be justified.

## CONCLUSION

We conclude that the trial court erred in finding that the police officers had probable cause to stop the Defendant's vehicle based on the tip from the informant. We further conclude that the stop was not justified based on reasonable suspicion of criminal activity or probable cause to believe the Defendant had committed a traffic violation. Therefore, the seizure of the Defendant was unlawful, and the evidence obtained as a result of that seizure must be suppressed. The order of the trial court overruling the Defendant's motion to suppress is reversed, and the case is dismissed.