# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 9, 2013 Session

## STATE OF TENNESSEE v. DAWN ALISH BLACK

**Appeal from the Circuit Court for Obion County**
**CC-12-CR-111        William B. Acree, Jr., Judge**

---

**No. W2013-00249-CCA-R3-CD  - Filed September 18, 2013**

---

The Defendant, Dawn Alish Black, entered a nolo contendere plea to driving under the influence (DUI), a Class A misdemeanor. *See* T.C.A. § 55-10-401 (2012). She was sentenced to eleven months and twenty-nine days, all suspended but 48 hours. On appeal, she presents a certified question of law regarding the legality of the traffic stop that led to her arrest. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

John M. Miles, Union City, Tennessee, for the appellant, Dawn Alish Black.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Jim Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the suppression hearing, Obion County Deputy Matt Woods testified that on February 25, 2012, around 9:26 p.m., he saw the Defendant's car exit a 4G's Quick Stop in front of him and cross the center line. He said the car slowed down and signaled a turn but did not turn and deactivated the signal. He said the car crossed the center line a couple of times and crossed the white "fog" line on the right. He said that the Defendant again activated her turn signal, slowed, and deactivated it. He stated that she signaled again and turned and that he stopped her. He said that the Defendant averaged between forty-five and fifty-five miles per hour and that the speed limit was fifty-five miles per hour. He said he waited to stop her until she turned because the road was curvy.

On cross-examination, Deputy Woods testified that the Defendant's left wheels crossed the middle line a couple of times and that the right wheels crossed the white line on the right. He said she did not leave the road, exceed the speed limit, impede traffic, or make sudden or lurching movements. He said that her driving appeared erratic and that he thought she was lost or "something was going on." He said she successfully negotiated the last turn. He said that he would have turned on his blue lights if she had made the second signaled turn.

Deputy Woods testified that the first turn the Defendant signaled was to the left, that the second was to the right, and that the turn she made was to the right. He followed her for nearly two miles or about one and one-half to two minutes. He said she "lingered a bit" when she crossed the lines on the left and the right but "didn't hang over there for [a] great distance." On redirect-examination, he said he did not have audio or video recordings of the events or recorded statements.

In denying the motion to suppress, the trial court found that the Defendant crossed the center line three times and the line on the right side once and that she turned on her blinker three times before making a turn. The court found that Deputy Woods had reasonable suspicion supported by specific and articulable facts to believe the Defendant was driving under the influence. Following the court's ruling, the Defendant pleaded nolo contendere but reserved the following certified question of law challenging the validity of the stop that led to her arrest:

> [O]n or about February 25, 2012, when the officer made a warrantless arrest of the Defendant for the misdemeanor of driving under the influence, said arrest was illegal in that it failed to meet the well-established precedent in Tennessee with regard to the legality of investigatory stops and probable cause for arrest. Specifically, the issue was that the arrest of the Defendant was illegal in that prior to the initial stop, the officer had no specific, articulable facts upon which to have a reasonable suspicion that the Defendant was engaged in or had engaged in any criminal activity.

On appeal, the Defendant contends that Deputy Woods did not have reasonable suspicion for an investigatory stop of her car. The State contends that the motion to suppress was properly denied. We agree with the State.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts

in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts as determined by the trial court is a question of law, which is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. *See State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). An automobile stop constitutes a seizure within the meaning of these constitutional provisions. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450 (1990); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993); *State v. Binion*, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). The police may stop a vehicle if they have either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *State v. Vineyard*, 958 S.W.2d 730, 731 (Tenn. 1997).

Tennessee Code Annotated § 55-8-123(1) (2012) states that when a roadway is divided into two or more marked lanes for traffic, "a vehicle shall be driven as nearly as practicable entirely within a single lane[.]" The evidence reflects that Deputy Woods saw a car pull onto the road, followed it, and saw it cross the middle yellow line twice and the white line on the right once in violation of Tennessee Code Annotated section 55-8-123(1). He also saw it signal and slow for two turns without making them before completing a third turn. We note that the record does not support the trial court's finding that the Defendant crossed the yellow line three times. In any event, Deputy Woods had probable cause to stop the Defendant based upon his observations of the statutory violation and the erratic driving. *See Watson*, 354 S.W.3d at 331 (holding that crossing the yellow line once and the fog line twice created probable cause to initiate a traffic stop); *Smith*, 21 S.W.3d at 258; *Vineyard*, 958 S.W.2d at 736 (holding that a violation of the traffic law "constitutes probable cause justifying" a traffic stop); *State v. Matthew T. McGee*, No. E2011-01756-CCA-R3-CD (Tenn. Crim. App. Sept. 13, 2012) (holding that reasonable suspicion and probable cause for a traffic stop existed when an officer received a report of a described car driving erratically and saw the car cross the fog line twice and attempt to change lanes without signaling). The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE