IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 3, 2004 Session

## STATE OF TENNESSEE  v.  WILLIE NORMAN

**Direct Appeal from the Circuit Court for Gibson County**
**No. 16224     Clayburn Peeples, Judge**

---

**No. W2003-02067-CCA-R3-CD  - Filed October 7, 2004**

---

Defendant, Willie Norman, was indicted for possession of over .5 grams of cocaine with intent to sell or deliver, resisting arrest, and two counts of assault. Defendant pled guilty to possession of cocaine with intent to sell or deliver, and the remaining counts were dismissed. Defendant entered his guilty plea, reserving for appeal, as a certified question of law, the issue of whether the search of his vehicle violated his constitutional rights. We conclude that the certified question of law was properly reserved for appeal. We also conclude that the trial court properly denied Defendant's motion to suppress. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA McGEE OGLE, J., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the appellant, Willie Norman.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald Campbell, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**Factual Background**

Defendant filed a motion to suppress evidence obtained as a result of a search of his vehicle, alleging that the officer did not have probable cause to stop his vehicle. The transcript of the preliminary hearing in the general sessions court was submitted by agreement of the parties to the circuit court judge as to the facts to be considered in the motion to suppress. At the preliminary hearing, Officer Scottie Betts, of the Rutherford Police Department, testified that on October 2, 2001, he observed Defendant's vehicle run a stop sign. Officer Betts also testified that Defendant "had his music extremely loud." Officer Betts stopped Defendant's vehicle in the parking lot of the Little

General store on South Trenton Street. Defendant exited his vehicle and approached Officer Betts' patrol car. Officer Betts gave Defendant a verbal warning about running the stop sign and playing loud music. Officer Betts then asked Defendant for his consent to search his vehicle. Defendant "mumbled something" and appeared "real nervous." Defendant "just turned and took off walking [in the direction of the Little General store]." Officer Betts repeatedly asked Defendant to come back, but Defendant did not comply with Officer Betts' request. Officer Betts confronted Defendant at the store entrance. Officer Betts asked Defendant to "please step back," and Defendant said that he was going into the store. Officer Betts again asked Defendant to come back, and Defendant "shoved" Officer Betts. Officer Betts advised Defendant that he was being arrested, and Defendant was "very combatant." Defendant resisted being handcuffed, and he "pushed" Officer Betts "numerous times on McKnight Street and continued, we turned and went up Church Street, and continued back and forth all the way up onto Tettleton." Other police officers arrived and Defendant was placed under arrest. Subsequently, Officer Betts conducted a search of Defendant's vehicle. In the console between the driver seat and passenger seat, Officer Betts found what laboratory tests revealed to be 9.2 grams of crack cocaine. Officer Betts testified that he suspected Defendant might have drugs in his vehicle because he knew that Defendant had prior drug convictions.

Police Chief Tim Fair, of the Rutherford Police Department, testified that he arrived at the parking lot where Officer Betts stopped Defendant and saw Defendant and Officer Betts standing beside Betts' patrol car. Chief Fair heard Officer Betts give Defendant a verbal warning for loud music and running a stop sign and ask Defendant for consent to search his vehicle. Chief Fair did not hear Defendant's response. Chief Fair saw Defendant turn and walk away from Officer Betts. Chief Fair testified that Officer Betts repeated the question, but Defendant continued to walk away. Officer Betts asked Defendant to return to the patrol car, but Defendant did not comply with his request. Chief Fair testified that Officer Betts followed Defendant to the store and directed Defendant to step back to the patrol car. Officer Betts advised Defendant that he was placing him under arrest. Chief Fair saw Defendant push Officer Betts and walk away from him. Officer Betts warned Defendant to stop or he would use a chemical spray. Officer Betts used a chemical weapon against Defendant. While Officer Betts and Chief Fair attempted to place Defendant under arrest, Defendant pushed Chief Fair in the chest several times. A search of Defendant's vehicle was conducted after his arrest.

At the conclusion of the hearing, the general sessions court judge orally made the following findings of fact and conclusions of law:

> The proof is that Officer Betts observed Mr. Norman operating the vehicle at which time he ran a stop sign and also the officer heard what he believed to be excessive noise of loud music in violation of the noise ordinance. He activated the blue lights and pulled over [Defendant] and gave him a warning. He could have issued a citation, could not have arrested I don't think for those, but he did not issue a citation, but he should not be criticized for giving someone a warning. After that, he asked for consent to search. [Defendant] mumbled something and then starts to walk off. Absent consent to search, which [Defendant] didn't give,

he mumbled something, but he didn't give consent, then they probably wouldn't have had the right to search the vehicle. If we didn't have a case of two assaults, I can tell you that I would probably suppress the evidence, but we've got a case where, according to the testimony of the officers is that when he was told to stop, and I'm not sure that they had the right to arrest him, but he did not have the right to assault two different police officers. Now when he assaulted two different police officers, that changed the whole case. They had a right to arrest him for the assault, and after arresting him for assault, they had a right to search his vehicle. If we didn't have those two assaults in this case, I would have real concern and might suppress the evidence, because he didn't give consent and I don't know what other basis they would have for searching the vehicle, but he chose to escalate the matter, and after the two assaults were committed and he was arrested, I find that they had a right to search the vehicle. . . . I find it to be lawful, incident to arrest for assault.

We note that there is no transcript in the record before us of any hearing in the circuit court on Defendant's motion to suppress. In the State's response to Defendant's motion to suppress, the State requests that the circuit court "obtain the facts in this case from the transcript of the preliminary hearing that the parties stipulate to as being an accurate account of the testimony given on that date." A transcript of the preliminary hearing in the general sessions court is attached to the State's response, which is included in the technical record. The circuit court orally denied Defendant's motion to suppress without making any oral or written findings of fact or conclusions of law. Therefore, on appeal, we must rely on the findings of the general sessions court.

**Reserved Certified Question of Law**

The State contends that Defendant has failed to properly reserve a certified question of law. Rule 37 of the Tennessee Rules of Criminal Procedure provides, in pertinent part,

> (b)     An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction [u]pon a plea of guilty . . . if [t]he defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> > (A)     The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;

(B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and

(D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. P. 37(b).

In *State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003), our supreme court reiterated its holding in *State v. Preston*, 759 S.W.2d 647 (Tenn. 1988), in which the Court "provided detailed guidance on seeking appellate review of a certified question of law pursuant to Rule 37 [of the Tennessee Rules of Criminal Procedure] by establishing several prerequisites." *Armstrong*, 126 S.W.3d at 910. In *Preston*, the supreme court held that "the final order or judgment from which the time begins to run to pursue . . . [an] appeal must contain a statement of the dispositive certified question of law reserved . . . for appellate review" and that "the question of law must be stated so as to clearly identify the scope and limits of the legal issue reserved." 759 S.W.2d at 650.

The State argues that the final judgment in this case does not comply with the requirements of Rule 37. The judgment, signed by the trial judge on July 15, 2003, states, "Reserved issue of search for appeal." At the guilty plea hearing, defense counsel stated:

[Defense counsel]: Your Honor, we're going to enter a plea in the case and reserve the question of the search –

[Trial court]: Yes, sir.

[Defense counsel]: – for purposes of appeal to the Court of Criminal Appeals.

[Trial court]: Right.

[Defense counsel]: And I think everybody agrees, Your Honor, the State and the defense, that the search in this case one way or the other disposes of it.

The trial court then proceeded into colloquy with the Defendant to determine whether the plea was being entered voluntarily and knowingly. The State did not object to the certified question of law at the time of Defendant's guilty plea. The supreme court stated in *Preston*, however,

-4-

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.

*Id*.

The requirements of *Preston* are "explicit and unambiguous," and those requirements have been strictly construed. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996); *see also Armstrong*, 126 S.W.3d at 911. It is the responsibility of the defendant "to see that these [Rule 37] prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified." *Preston*, 759 S.W.2d at 650.

The judgment in this case does not contain an explicit statement of the dispositive certified question of law reserved for appellate review. Nor does it state the scope and limits of the legal issue reserved. Nor does it state that the trial court and the State consented to the reservation of the certified question, or that the trial court and the State are of the opinion that the question is dispositive of the case. The judgment, alone, does not meet the requirements for appealing a certified question of law as set forth in *State v. Preston*, *supra*.

However, the trial judge signed an order, also on July 15, 2003, amending the judgment to incorporate by reference the dispositive certified question of law. This order was not stamped as filed by the clerk, however, until August 19, 2003. The order states, "[t]his Order Certifying Question of Law is entered for the purpose of more fully stating the certified question of law reserved in this case and this order is referred to and incorporated by reference in the Judgment order entered on this same date." The order further states,

> With the consent of the Court and the consent of the District Attorney General, the defendant's plea explicitly reserves the right to appeal a certified question of law, concerning the legality of the search of the defendant's vehicle, which the trial [c]ourt and the District Attorney General agree is dispositive of this case.

The State cites *State v. Green*, 106 S.W.3d 646 (Tenn. 2003), and argues that the trial court was without jurisdiction to amend the judgment in this case. The State argues that the trial court did not retain jurisdiction to enter the order after the judgment became final. "[A] judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence." *Id.* at 650. Generally, a trial court has no power to amend its judgment once the judgment becomes final. *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991).

Additionally, the State argues that Defendant's notice of appeal was untimely. Defendant filed a notice of appeal on August 22, 2003. A notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from . . . ." Tenn. R. App. P. 4(a). The untimely filing of a notice of appeal may be waived "in the interest of justice." *Id*.

Prior to filing its brief, the State filed a motion to dismiss this appeal, alleging that Defendant failed to comply with the requirements of *Preston*. The motion was denied, and the State was given thirty days to file its brief. In Defendant's response to the State's motion, Defendant asserts that the district attorney general was in possession of both the judgment form and the trial court's order on July 15, 2003, but did not file the judgment with the clerk until July 29, 2003, and did not file the order until August 19, 2003. Defendant asserts that the district attorney general "refused to sign" the order, prepared by defense counsel, on the date Defendant entered his guilty plea. Defense counsel asserts that he made several attempts to contact the district attorney general's office and request filing of the judgment and the order.

Tenn. Code Ann. section 40-35-209(e) provides that the district attorney general must prepare the judgment of conviction form following a defendant's sentencing. The judgment form in this case was signed by the trial judge on July 15, 2003, the same date on which Defendant entered his plea of guilty. However, the judgment was not *filed* by the clerk until July 29, 2003. Rule 32(e) of the Tennessee Rules of Criminal Procedure states that "[t]he judgment shall be signed by the judge and entered by the clerk." Tenn. R. Crim. P. 32(e). We conclude that the judgment was entered on July 29, 2003, the date it was filed with the trial court clerk. Accordingly, Defendant's notice of appeal in this case was timely. Regarding the trial court's order, entered on August 19, 2003, the State's argument that it was entered after the judgment became final also fails. Furthermore, we conclude that the order contains a statement of the certified question of law reserved for appeal that is sufficient to satisfy the requirements of *Preston*.

The supreme court, in *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996), held that a subsequent order that brings a judgment into compliance with Rule 37 filed *after the filing of the notice of appeal* was insufficient because the trial court loses jurisdiction with the filing of the notice of appeal. *See also State v. Irwin*, 962 S.W.2d 477, 479 (Tenn. 1998). Because the subsequent order in this case was filed before the filing of the notice of appeal, which occurred on August 22, 2003, we conclude that the order effectively cured the original judgment's noncompliance with Rule 37.

**Motion to Suppress**

Having concluded that this appeal is properly before us, we address the merits of the issue. The trial court's findings of facts at the conclusion of a hearing on a motion to suppress are afforded the weight of a jury verdict. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The trial court's findings of fact are conclusive on appeal unless the evidence preponderates against them. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). The prevailing party in the trial court is entitled to the strongest view of the evidence, as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Odom*, 928 S.W.2d at 23. We review the trial court's application of the law to

the facts, however, *de novo*. *See State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). As stated above, under the particular facts of this case, we will treat the findings of the general sessions court as those of the trial court.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Article I, section 7 of the Tennessee Constitution contains a similar prohibition against unreasonable searches and seizures. "'Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and the evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting *Yeargan*, 958 S.W.2d at 629).

When evidence is seized as a result of a warrantless search of a vehicle, the State must establish that the search was conducted pursuant to one of the exceptions to the warrant requirement. *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998). One such exception to the warrant requirement occurs when a police officer conducts a stop of an automobile based upon a reasonable suspicion or probable cause to believe that a traffic violation has occurred. *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997).

Defendant argues that Officer Betts' stop of Defendant's vehicle was pretextual. A police officer may stop a vehicle if the officer has probable cause, or a reasonable suspicion supported by specific and articulable facts, to believe that an offense has been or is about to be committed. *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000). In *Whren v. United States*, the United States Supreme Court held that where an officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if it is a complete pretext for the officer's subjective motivations in making the stop. 517 U.S. 806, 813-14, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *Vineyard*, 958 S.W.2d at 734. Officer Betts acknowledged that he suspected Defendant of having drugs in his vehicle and that his suspicion was based on knowledge of Defendant's prior convictions. However, Officer Betts testified that he observed Defendant run a stop sign and that he heard excessively loud music coming from Defendant's vehicle. Tenn. Code Ann. section 55-8-149 provides that the driver of a vehicle must stop at a stop sign. We conclude that the evidence does not preponderate against the trial court's determination that Defendant's actions constituted a traffic offense, giving Officer Betts probable cause to stop Defendant's vehicle.

Upon stopping Defendant's vehicle, Officer Betts testified that he gave Defendant a verbal warning and asked for consent to search Defendant's vehicle. The general sessions court found, and presumably the trial court adopted the finding, that Defendant did not give consent to search his vehicle. We conclude that the evidence does not preponderate against that finding. After Officer Betts gave Defendant a verbal warning and asked for consent to search Defendant's vehicle, Defendant "mumbled something" and walked away from Officer Betts toward the convenience store. This Court has held,

-7-

When a police officer issues a traffic citation or warning and returns a driver's license and registration, a traffic stop ceases to be a seizure for purposes of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution and becomes a consensual encounter unless a driver has "objectively reasonable" cause to believe that he or she is not free to leave.

*State v. McCrary*, 45 S.W.3d 36, 42 (Tenn. Crim. App. 2000) (citations omitted).

Unless Defendant gave voluntary consent that was "'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion,'" the search of Defendant's vehicle was still not valid. *State v. Simpson*, 968 S.W.2d 776, 784 (Tenn. 1998) (quoting *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992)). Clearly, Defendant did not give Officer Betts consent to search his vehicle.

Defendant cites *State v. Garcia*, 123 S.W.3d 335 (Tenn. 2003), in which the Tennessee Supreme Court held that the defendant's consent to search his vehicle was not sufficiently attenuated from his unlawful detention. *Id.* at 348. In *Garcia*, the supreme court concluded that the officer, who testified that she had observed the defendant "weaving," did not have reasonable suspicion to make the initial traffic stop. *Id.* at 345. The officer admitted that "two minutes into the traffic stop," she determined that the defendant was not intoxicated. She then issued the defendant a warning citation. The officer retained the defendant's driver's license and vehicle registration and returned to her patrol car to write the citation. She also radioed for another officer to bring a drug-detection dog to the scene and prepared a "Consent to Search" form in Spanish. The officer returned to the defendant's vehicle and directed the defendant to step out of the vehicle. The defendant complied, and the officer gave him his license and registration and the warning citation. The officer then told the defendant, "The stop's complete," and began to walk back to her patrol car. She immediately turned back and began questioning the defendant about whether he had any weapons or drugs in his vehicle. The officer testified that the defendant became "nervous" and "fidgety." The officer then asked the defendant for consent to search the vehicle. The defendant read and signed the consent form. The officer and another officer who arrived at the scene searched the defendant's vehicle and found 40.1 pounds of methamphetamine. *Id.* at 338-340. The supreme court concluded that "the initial stop and continued detention of the defendant . . . were not based upon reasonable suspicion of criminal activity," and were therefore unconstitutional. *Id.* at 342. The Court further concluded "that the defendant's consent was gained in exploitation of the unlawful detention." *Id.* at 348.

The case *sub judice* is distinguishable from *Garcia* because, unlike *Garcia*, the officer in this case had probable cause to initiate the traffic stop. Also, unlike *Garcia*, the defendant in this case did not give consent to search his vehicle. Therefore, attenuation between detention and consent is not the relevant inquiry.

After Defendant refused consent to search his vehicle, Officer Betts followed Defendant and continued to question Defendant, asking him to return to the patrol car. Officer Betts testified that Defendant appeared nervous. Officer Betts testified that when he approached Defendant at the store entrance, Defendant pushed him. Officer Betts then attempted to arrest Defendant, and Defendant

resisted arrest. After Officer Betts arrested Defendant, he conducted a search of Defendant's vehicle and found cocaine in his vehicle.

Another exception to the warrant requirement is a search incident to a lawful arrest. *See New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). Defendant cites Tenn. Code Ann. section 40-7-118(b)(1), which provides that an officer who observes the commission of certain misdemeanor offenses is required to cite and release the offender in lieu of effecting a custodial arrest. *See State v. Walker*, 12 S.W.3d 460 (Tenn. 2000). "Therefore, a citizen has a presumptive right to be cited and released for failure to obey a stop sign, rather than being placed under custodial arrest." *State v. Lillie Fran Ferguson*, No. W2002-00638-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 996, (Tenn. Crim. App. at Jackson, November 19, 2002), *no perm. to app. filed*. The State argues that Defendant was not arrested for running a stop sign, but rather he was arrested for assaulting a police officer. The general sessions court found that the police officers conducted a search incident to arrest following Defendant's arrest for assault. We agree.

The evidence does not preponderate against the finding of the general sessions court that Officer Betts made a lawful arrest of Defendant for assault. Officer Betts testified that Defendant "pushed" him when he approached Defendant at the entrance to the store. Chief Fair testified that he saw Defendant push Officer Betts and that Defendant also pushed him in the chest. Following the officers' custodial arrest of Defendant for assault, they conducted a search incident to arrest of his vehicle.

Recently, in *Thornton v. United States*, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004), the United States Supreme Court clarified its holding in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), and held that a search of the passenger compartment of a vehicle, incident to a lawful arrest, is not limited to situations in which the occupant of the vehicle is inside the vehicle at the time of the stop. The Court noted that in *Belton*, the Court did not rely on the fact that the police officer initiated contact with the occupants of the vehicle while they were still inside the vehicle. The Court reasoned that "the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." *Thornton*, 124 S. Ct. at 2131, 158 L. Ed. 2d at 913.

At the preliminary hearing in this case, Officer Betts testified that Defendant exited his vehicle and approached Officer Betts' patrol car. However, in *Thornton*, the Court noted that "while an arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment that the officer first initiated contact with him" *Id.*, 124 S. Ct. at 2131-32, 158 L. Ed. 2d at 914.

Briefly, we note that neither the general sessions court at the conclusion of the preliminary hearing nor the trial court made any specific findings as to the temporal or spatial relationship of Defendant to his vehicle at the time of his arrest. Officer Betts testified at the preliminary hearing that after Defendant pushed him in the entrance to the store, Officer Betts attempted to arrest

Defendant, but Defendant resisted. Officer Betts testified that Defendant pushed him "numerous times on McKnight Street and continued, we turned and went up Church Street, and continued back and forth up that way all the way up onto Tettleton." However, Defendant did not reserve this issue for appeal. Rather, Defendant's argument in support of his motion to suppress the evidence obtained from the search was the legality of the officers' arrest. We have concluded that the officers made a lawful arrest of Defendant for assault and conducted a search incident to arrest. Accordingly, we affirm the trial court's denial of Defendant's motion to suppress.

## CONCLUSION

The judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE