# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 9, 2013 Session

## STATE OF TENNESSEE v. BRANDON TRAE WAGSTER

**Appeal from the Circuit Court of Fayette County**
**No. 12-CR-42     Weber McCraw, Judge**

**No. W2012-02231-CCA-R3-CD  - Filed April 30, 2013**

Brandon Trae Wagster ("the Defendant") was indicted for driving under the influence and violation of the implied consent law.  He filed a motion to suppress, challenging the legality of the stop of his vehicle.  After an evidentiary hearing, the trial court granted the Defendant's motion and dismissed the charges against him.  The State appeals.  After a thorough review of the record and the applicable law, we reverse the judgment of the trial court and reinstate the Defendant's charges.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Reversed; Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ, joined.

Robert E. Cooper, Jr., Attorney General & Reporter; Clarence E.  Lutz, Assistant Attorney General; Mike Dunavant, District Attorney General; and Matt Hooper, Assistant District Attorney General, for the appellant, State of Tennessee.

Robert M. Brannon, Jr., Memphis, Tennessee, for the appellee, Brandon Trae Wagster.

## OPINION

### Factual and Procedural Background

The Defendant was indicted in March 2012 for driving under the influence ("DUI") and violation of the implied consent law.  On April 10, 2012, the Defendant filed a motion to suppress, challenging, *inter alia*, the legality of the stop of his vehicle.  The trial court held an evidentiary hearing on this ground which adduced the following proof:

Officer Jeffrey DuPriest of the Oakland Police Department ("OPD") testified that he was on duty during the early morning of September 17, 2011. He was "running stationary radar" in a parking lot east of "the Ozone"[1] and Dogwood Lane in Fayette County, Tennessee. While running radar, Officer DuPriest heard "the sound of screeching tires" in the Ozone parking lot and looked to that direction. He was not able to ascertain which vehicle had "screech[ed]" its tires, but he observed the Defendant driving his vehicle on Dogwood Lane traveling northbound toward Highway 64.[2] Officer DuPriest was not able to determine whether the Defendant's vehicle had pulled out of the Ozone parking lot. Officer DuPriest then observed the Defendant's vehicle turn left onto Highway 64 and "travel westbound in the eastbound emergency lane [of Highway 64] and then pull back into the Ozone parking lot." Officer DuPriest stated that the Defendant traveled approximately one block in the wrong direction of traffic.

Officer DuPriest testified that to get from Dogwood Lane, where he initially observed the Defendant's vehicle, to the Ozone parking lot, a vehicle should

> pull straight across the eastbound lane [of Highway 64], go into the median strip and then once he's able to establish the due care to pull out into traffic, travel westbound [on Highway 64], go down to the next median strip, turn around then turn into the [Ozone] parking lot.

When the Defendant was traveling in the wrong direction, Officer DuPriest stated that he left the parking lot in which he had been parked and "pulled into the side parking lot of [the] Ozone to await for [the Defendant's] vehicle to come out" of the Ozone parking lot. Once the Defendant's vehicle "c[a]me around," Officer DuPriest activated his emergency lights. Officer DuPriest testified that some other vehicles were in the Ozone parking lot and some were traveling on Dogwood Lane at the time that he activated his emergency lights.

After Officer DuPriest activated his emergency lights, the Defendant pulled back onto Dogwood Lane traveling northbound. Officer DuPriest pulled behind the Defendant's vehicle on Dogwood Lane and followed it. Once the Defendant had turned left onto Dogwood Lane, he pulled out onto Highway 64 and turned left, traveling westbound in the correct lane of travel. The Defendant traveled approximately one block westbound on Highway 64 and turned right onto Lakewood Drive, traveling northbound. He traveled for approximately one-quarter of a mile and then "stopped in the lane of travel." Officer DuPriest stated that he stopped the Defendant's vehicle for "traveling westbound in the

---

[1] According to Officer DuPriest, the Ozone is a bar.

[2] According to Officer DuPriest's diagram drawn during the hearing, see infra p. 3, Dogwood Lane is adjacent to the Ozone and perpendicular to Highway 64. Highway 64 is also adjacent to the Ozone.

-2-

eastbound lanes." He stated that, at that point, he did not have any suspicion that the Defendant was driving under the influence. Officer DuPriest stated that, when the Defendant traveled westbound in the eastbound emergency lane on Highway 64, there was no traffic and there was no obstruction in the roadway which would have prevented a vehicle from crossing into the westbound lane to travel in the correct lane on Highway 64.

The trial court asked Officer DuPriest whether the Defendant was driving on the "emergency shoulder" or in an "actual lane of traffic." Officer DuPriest responded that the Defendant was traveling in the emergency lane. The trial court then asked Officer DuPriest whether the "[emergency lane] also turn[s] into the parking lot for Ozone[.]" Officer DuPriest stated that the emergency lane does turn into the parking lot for the Ozone but disagreed that the "emergency lane [is] the same as the [Ozone] parking lot." He stated, however, that you can "get to the [Ozone] parking lot from the emergency lane." Again, he reiterated that the emergency lane is separate from the Ozone parking lot. The trial court inquired into how Officer DuPriest was able to distinguish the difference between the emergency lane and the Ozone parking lot. Officer DuPriest responded that the difference between the two is the "type of pavement" – "the structure of the roadway and the actual parking lot of the Ozone."

Lastly, Officer DuPriest testified that the roads that he had discussed during his testimony are all public roads and that the Ozone parking lot is a public parking lot. The State asked Officer DuPriest to draw a diagram of the Ozone, including the location of Dogwood Lane, Highway 64, and the emergency lane that the Defendant traveled in. Officer DuPriest complied. The State then entered the diagram as an exhibit at the hearing.

On cross-examination, Officer DuPriest testified that he since had resigned from the OPD.[3] Defense counsel asked Officer DuPriest if he resigned voluntarily, and Officer DuPriest stated that he did not "feel that that's indicative of this case." He denied that he was terminated for some violation of the OPD rules and then agreed that it was a voluntary resignation. He stated that he also was "post-certified in the state of Tennessee" but that he was not employed with a police department at the time of the hearing. He again agreed that the only reason that he stopped the Defendant's vehicle was that it "traveled in the wrong direction on Highway 64." Defense counsel asked Officer DuPriest what was the distance in mileage that the Defendant traveled in the wrong direction before he turned back into the Ozone parking lot. Officer DuPriest stated that the Defendant traveled approximately one-tenth of a mile in the wrong direction.

Defense counsel asked Officer DuPriest whether he planned to issue the Defendant a citation, and Officer DuPriest responded that it was not his "intention to issue [the

---

[3] Officer DuPriest did not testify to when he resigned.

Defendant] a citation" but that he stopped him to advise him that he had violated a traffic law. He stated that, customarily, it is in the individual officer's discretion whether to issue a citation. Officer DuPriest agreed that a violation of Tennessee Code Annotated section 55-8-125[4] is a crime for which there is punishment.

Officer DuPriest stated that his patrol car was parked approximately fifteen to twenty feet from Highway 64. Highway 64 was approximately 100 to 120 yards away from the Ozone. He disagreed that there was no lighting on Highway 64, stating that there was "ambient light from other businesses and things like that but as far as street lights, no." The ambient light was exhibited from the Ozone and from the entrance of Lakewood Drive, a subdivision, which was approximately one block away, or one-tenth of a mile, from the Ozone.

At the conclusion of the hearing, the trial court granted the Defendant's motion to suppress, stating,

> The [c]ourt asked a couple of questions. I am somewhat familiar with that area.[5] The [c]ourt, after hearing the testimony and specifically looking at the drawing [that Officer DuPriest executed during the hearing] and asking my questions, I don't find that the actions of the [D]efendant to be unreasonable driving actions. I don't find that it arises to a reasonable suspicion to necessitate the stop so I am going to grant the [m]otion to [s]uppress.

The trial court also filed a written order granting the motion and dismissing the Defendant's charges. The written order states, in pertinent part,

> [T]his [c]ourt finds that the Defendant's driving did not give the officer reasonable suspicion and/or probable cause to effectuate a legal traffic stop in this matter; and thus, the motion is well taken and should be granted. The [c]ourt further finds that . . . all charges in this matter must be dismissed as the State lacks any further evidence in which to prosecute the Defendant.

Thereafter, the State filed a motion to reconsider, which the trial court denied. The State filed a timely appeal, contending that the trial court erred in granting the Defendant's motion to suppress.

---

[4] For the specific provisions of this code section, see infra p. 7.

[5] The trial court's apparent reliance upon its own knowledge of the area separate and apart from the record in the hearing has not been raised as an issue in this appeal.

## Analysis

### *Motion to Suppress*

The State contends that the trial court erred in granting the Defendant's motion to suppress. In reviewing the trial court's determination on a defendant's motion to suppress, questions regarding the witnesses' credibility, "the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, we will uphold the trial court's factual findings unless the preponderance of the evidence is otherwise. Id. However, when the trial court has applied the law to the facts, we will conduct a de novo review. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Because the Defendant is the prevailing party, he is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution, as well as article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. State v. Ingram, 331 S.W.3d 746, 754 (Tenn. 2011) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).[6] Under both constitutions, "a warrantless search or seizure is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)); see also State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003). One of these exceptions is that police officers may stop an automobile if they have probable cause or reasonable suspicion to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996); State v. Vineyard, 958 S.W.2d 730, 734-35 (Tenn. 1997); State v. Watson, 354 S.W.3d 324, 329 (Tenn. Crim. App. 2011). If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. See Whren, 517 U.S. at 813-15; Vineyard, 958 S.W.2d at 734-35. Reasonable suspicion exists when "'specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Brotherton, 323 S.W.3d 866, 870 (Tenn. 2010) (quoting Terry v. Ohio, 392 U.S. 1, 20-21 (1968)); State v. Day, 263 S.W.3d 891, 902-903 (Tenn.

---

[6] The Fourth Amendment is applicable to the states through the Fourteenth Amendment to the United States Constitution. See Mapp, 367 U.S. at 655; Ingram, 331 S.W.3d at 754. The intent and purpose of article I, section 7 of the Tennessee Constitution is identical with the Fourth Amendment; however, our Supreme Court has noted previously that Tennessee's search and seizure case law has developed independently from, and extends greater protection than, federal law. See State v. Richards, 286 S.W.3d 873, 877-78 (Tenn. 2009).

2008). Whether reasonable suspicion exists is based upon an objective standard, and courts must look to the totality of the circumstances. See Terry, 392 U.S. at 21-22; Brotherton, 323 S.W.3d at 870 (citing State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000); State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001)).

The State first contends that the trial court applied an incorrect standard in granting the Defendant's motion to suppress because it stated that the Defendant's driving was not "unreasonable." We disagree with the State. As previously discussed, police officers can stop an automobile if they have probable cause or reasonable suspicion to believe that a traffic violation has occurred. See Whren, 517 U.S. at 810 (1996); Vineyard, 958 S.W.2d at 734-35; Watson, 354 S.W.3d at 329. In the trial court's oral findings, the trial court ultimately held that the Defendant's driving did not give Officer DuPriest "reasonable suspicion" to conduct a traffic stop of the Defendant's vehicle. The trial court reaffirmed its application of the correct standard in its written findings when it held "that the Defendant's driving did not give the officer reasonable suspicion and/or probable cause to effectuate a legal traffic stop in this matter." Accordingly, this issue is without merit.

Next, the State asserts that the trial court erred in granting the Defendant's motion to suppress.[7] In this case, the trial court heard the testimony of only one witness, Officer DuPriest. The facts are not disputed, and, upon our review of the record, the trial court did not make any credibility findings, either expressly or implicitly, with respect to Officer DuPriest's testimony. As a result, the trial court's conclusions that the Defendant's driving does not "arise[]to a reasonable suspicion to necessitate the stop" and that the "Defendant's driving did not give [Officer DuPriest] reasonable suspicion and/or probable cause to effectuate a legal traffic stop in this matter" are conclusions of law derived from an application of the law to the undisputed facts of this case. Therefore, in determining whether the trial court erred in granting the Defendant's motion to suppress, we apply de novo review. See, e.g., State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000) ("The trial court heard the testimony of only one witness. The facts are not disputed. As a result, the trial court's conclusion that a seizure did not occur is a conclusion of law derived from an application of the law to the undisputed facts of this case. Therefore, in determining whether the trial court and the Court of Criminal Appeals erred in denying the defendant's motion to suppress, we apply de novo review.")

In this case, the Defendant clearly was seized when Officer DuPriest initiated his emergency lights and pulled behind the Defendant's vehicle on Dogwood Lane to conduct a traffic stop of his vehicle. See Ingram, 331 S.W.2d at 756; Day, 263 S.W.3d at 901-902.

_____

[7] Although the Defendant contends that the State only raised on appeal whether the trial court applied an incorrect legal standard, we disagree. A reading of the State's appellate brief indicates that it also challenges the trial court's ruling on the motion to suppress.

Consequently, we must determine whether Officer DuPriest had probable cause or reasonable suspicion that a traffic violation had occurred at the time he initiated his emergency lights. See Vineyard, 958 S.W.2d at 734; see also Whren, 517 U.S. at 810.

Officer DuPriest testified that during the early morning of September 17, 2011, he observed the Defendant drive his vehicle in the emergency lane on Highway 64 in the wrong direction of traffic. Specifically, he stated that he observed the Defendant " travel westbound in the eastbound emergency lane [of Highway 64]" for approximately one block, or one-tenth of a mile, before turning into the Ozone parking lot. Although the eastbound emergency lane is adjacent to the Ozone parking lot, Officer DuPriest testified that the emergency lane is separate from the Ozone parking lot and that he can distinguish the difference between the two based on the type of pavement – "the structure of the roadway and the actual parking lot of the Ozone." Moreover, he observed no traffic and no obstruction in the roadway which would have prevented the Defendant from traveling in the westbound lane of Highway 64 to the Ozone parking lot, instead of traveling westbound in the eastbound emergency lane in the wrong direction of traffic. After watching the Defendant travel "in the wrong direction on Highway 64," Officer DuPriest initiated a stop of the Defendant's vehicle to advise him that he had violated a traffic law.

Based on this testimony, we find that Officer DuPriest at least had reasonable suspicion based on specific and articulable facts that a violation of Tennessee Code Annotated section 55-8-125 (2004) had occurred. This provision provides as follows:

> Whenever any highway has been divided into two (2) roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over, across, or within any dividing space, barrier or section, except through an opening in the physical barrier or dividing section or space or at a cross-over or intersection established by public authority.

Tenn. Code Ann. § 55-8-125. Officer DuPriest's testimony established that Highway 64 is a highway divided into two roadways by an intervening space. Moreover, the proof established that the Defendant violated this provision because he failed to drive in the "right-hand roadway" of Highway 64. Thus, the trial court erred in granting the Defendant's motion to suppress.

## CONCLUSION

For these reasons, the judgment of the trial court granting the Defendant's motion to suppress is reversed, and the Defendant's charges for DUI and violation of the implied consent law are reinstated. Accordingly, this case is remanded to the trial court for further proceedings consistent with this opinion.

_____
JEFFREY S. BIVINS, JUDGE