IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 13, 2015

**STATE OF TENNESSEE v. THOMAS GEORGE HEADLA**

**Appeal from the Circuit Court for Sevier County**
**No. 18798-III    Rex H. Ogle, Judge**

**No.  E2015-00560-CCA-R3-CD – Filed December 30, 2015**

The Defendant, Thomas George Headla, pleaded guilty in the Circuit Court for Sevier County to driving under the influence (DUI), a Class A misdemeanor.  *See* T.C.A. § 55-10-401 (2012) (amended 2013, 2015).  The trial court sentenced the Defendant to eleven months, twenty-nine days suspended to probation after forty-eight hours in confinement.  On appeal, the Defendant presents a certified question of law regarding the legality of the traffic stop.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ. joined.

Bryan E. Delius and Bryce McKenzie, Sevierville, Tennessee, for the appellant, Thomas George Headla.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; James Dunn, District Attorney General; and Gregory Eshbaugh and Bradley Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a traffic stop of the Defendant's sport utility vehicle (SUV) based upon an anonymous 9-1-1 call and subsequent observations by a police officer.  The Defendant filed a motion to suppress the evidence obtained as a result of the stop, contending that the officer lacked reasonable suspicion or probable cause to initiate a stop.

At the suppression hearing, Sevierville Police Officer Graham Brantley testified that he was certified in Tennessee highway safety standard field sobriety testing.  Officer

Brantley said that around midnight on January 22, 2013, dispatch advised him that a 9-1-1 caller reported a reckless driver in a "white SUV, possibly a Tahoe Suburban, a larger SUV model." After Officer Brantley turned onto Highway 66, dispatch advised him that his patrol car was behind the 9-1-1 caller and that "the vehicle . . . was the one farther up the road." Officer Brantley said that he observed an SUV matching the description provided by the 9-1-1 caller, that the SUV was preparing to turn left, and that he followed it. Officer Brantley stated,

> As I fell in behind [the SUV], it began to go through the intersection of Huffaker and 66 at a very slow rate. It began to go up Huffaker. As it approached the stop sign for Huffaker and Grandview, it stopped approximately six feet short of the stop sign. It pulled up a little bit more and stopped again and then it began to turn right onto Grandview . . . . [It] swung a wide turn and began traveling on the left side of Grandview Drive.

The video recording from Officer Brantley's police cruiser was played for the trial court. In the recording, Officer Brantley turned onto Grandview Drive. A white SUV was visible on the roadway ahead of Officer Brantley's cruiser. The SUV drifted between the middle and left sides of the roadway before drifting to the far left side of the roadway. Officer Brantley activated his blue lights, and the SUV continued driving slowly on the left side of the roadway before turning right into a driveway.[1]

Officer Brantley testified that Grandview Drive was a "relatively straight," flat, and undivided two-way road. He said that at the time he stopped the SUV, no cars were parked along the road, no vehicles were traveling on the road, and no construction zones were in the area. Officer Brantley said that he observed the SUV for about two minutes before activating his blue lights.

On cross-examination, Officer Brantley testified that the Defendant never exceeded the speed limit or "weaved" within his lane of travel and that the Defendant turned appropriately at a traffic light and maintained his lane of travel on Huffaker Road before the stop sign. Officer Brantley said that stopping short of a stop sign was not a traffic violation. He stated that the Defendant passed a van parked in a driveway with its bumper two to three feet from the right side of the road and that in Officer Brantley's experience, cars were routinely parked on Grandview Drive.

Officer Brantley testified that he did not know whether the 9-1-1 caller "had an axe to grind" with the Defendant. Officer Brantley stated that he did not ask the

---

[1] The recording as contained in the record continued to show field sobriety tests administered by Officer Brantley, but the record reflects that the trial court did not view this part of the recording at the suppression hearing.

dispatcher to investigate the caller. He said that he did not observe any suspicious activity before the Defendant turned off Highway 66. Officer Brantley stated that "[a]mong other indicators," the reason he stopped the Defendant was "the position of the vehicle in relation to the roadway[.]"

Upon examination by the trial court, Officer Brantley testified that with his certification in field sobriety testing, he observed "various indicators of [impaired] driving that aren't necessarily traffic violations, such as negotiating curves slowly, stopping short, [and] misjudgment of distances[.]"

Thomas Ham, a private investigator, testified for the defense that he traveled to Grandview Drive multiple times to photograph the area where the traffic stop occurred and to document traffic and parking patterns. He said that it was common for vehicles to park along the right side of Grandview Drive "in the actual travel path[.]" Photographs of Grandview Drive taken by Mr. Ham after the night of the stop showed vehicles parked on the street.

On cross-examination, Mr. Ham testified that the police cruiser video recording did not show vehicles parked on the right side of Grandview Drive but that there was "a white van . . . near the edge of the roadway, and that's at also the point where [the Defendant's] vehicle [moves] . . . as if he is moving over to give distance to that vehicle."

The prosecutor contended that reasonable suspicion and probable cause existed to stop the Defendant. He argued that the Defendant's SUV matched the description and location of the vehicle described by the 9-1-1 caller and that Officer Brantley observed "indicator[s] of impairment," including the Defendant's driving slowly, stopping short of the stop sign, and driving on the left side of Grandview Drive. The prosecutor also argued that because Grandview Drive was a two-way street, the Defendant was in violation of the statute requiring vehicles to drive on the right side of the road. *See* T.C.A. § 55-8-115 (2014).

The Defendant argued that the sole reason for the traffic stop was the position of the Defendant's SUV on Grandview Drive, which could have been explained by the general presence of parked vehicles on the right side of the road. The Defendant also argued that he did not violate Code section 55-8-115 because he stayed "as much as practical to the right side of the roadway[.]"

The trial court denied the Defendant's motion to suppress. The court found that the Defendant "was well over the middle of the road, that in an[d] of itself, maybe being a little bit over the center of an unmarked road, might not be enough, but it does appear to the Court on the video that he was way over." The court also found that the 9-1-1 caller's information was partially confirmed by Officer Brantley. The court concluded that the

information provided by the 9-1-1 caller, when combined with Officer Brantley's observations, created probable cause. The court stated "that there was nothing on the roadway where the defendant was stopped . . . [and the Defendant] went . . . that far over in the other lane . . . I think that gave this officer probable cause to stop him."

After the suppression hearing, the Defendant pleaded guilty and reserved the following certified question:

> Whether the trial court erred in denying the Defendant's motion to suppress when the Defendant's vehicle was seized without warrant pursuant to a traffic stop in violation of the Article 1, section 7 of the Tennessee Constitution and the Fourth and Fourteenth Amendments of the United States Constitution where no reasonable suspicion supported an investigatory stop, no probable cause of a traffic violation existed, and no exception to the warrant requirement or consent supported the stop where the Defendant drove left of center on an undivided roadway and no other traffic violations were observed by law enforcement.

Tennessee Criminal Procedure Rule 37(b)(2)(A) provides that an appeal can be taken from a plea of guilty if the Defendant enters into a plea agreement and explicitly reserves with the consent of the State and the trial court a certified question of law that is dispositive of the case. *See* Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv); *State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003). "An issue is dispositive when this court must either affirm the judgment or reverse and dismiss. An issue is never dispositive when we might reverse and remand[.]" *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Furthermore, the fact that the defendant, the State, and the trial judge have agreed the issue is dispositive does not bind this court. *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988). "[T]he appellate courts must . . . determine if the record on appeal demonstrates how that question is dispositive of the case . . . . If the appellate court does not agree that the certified question is dispositive, appellate review should be denied." *Id*. (citing *State v. Jennette*, 706 S.W.2d 614, 615 (Tenn. 1986)); *see State v. Dailey*, 235 S.W.3d 131, 134-35 (Tenn. 2007). The certified question must also clearly identify "the scope and limits of the legal issue reserved." *See* Tenn. R. Crim. P. 37(b)(2)(A)(ii).

The Defendant contends that the stop was not supported by reasonable suspicion, arguing that our supreme court's opinion in *State v. Hanning*, 296 S.W.3d 44 (Tenn. 2009), was overruled by the United States Supreme Court in *Navarette v. California*, 134 S.Ct. 1683 (2014). The State responds that the certified question is not dispositive of the case, that consideration of the effect of *Navarette* on *Hanning* is outside the scope of the certified question, and that the stop was supported by reasonable suspicion and probable cause.

We agree with the Defendant that the certified question is dispositive of the case because the sole evidence of the Defendant's intoxication was obtained as a result of the traffic stop and that absent Officer Brantley's observations, reasonable suspicion or probable cause would not have existed to support the traffic stop. The question identifies the scope and limits of the issue reserved. We therefore consider the question on its merits.

We agree with the State that consideration of *Navarette* is outside the scope of the certified question. *Navarette* and *Hanning* discuss the reliability of anonymous 9-1-1 callers and how that determination bears on reasonable suspicion. The certified question raises Officer Brantley's observations as a basis for the stop, not the 9-1-1 call. As a result, we will consider the certified question only in the context of Officer Brantley's observations.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); see *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. Warrantless seizures are "presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the . . . seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997); *see Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

A law enforcement officer's initiating a traffic stop constitutes a seizure pursuant to the United States and Tennessee Constitutions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *see Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see also State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). However, a police officer is permitted to initiate a traffic stop without a warrant for the purpose of a brief investigatory stop based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an]

intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see Binnette*, 33 S.W.3d at 218. The objective standard for determining whether a police officer has specific and articulable facts that a suspect has committed a crime or is about to commit a crime focuses on whether "the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate[.]" *Terry*, 392 U.S. at 21-22 (internal quotation marks and citations omitted); *see State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). "Reasonable suspicion is a particularized . . . basis for suspecting the subject of a stop of criminal activity, and it is determined by considering the totality of the circumstances surrounding the stop." *Binette*, 33 S.W.3d at 218 (internal citations omitted). This determination includes considerations relative to "'(i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and experience.'" *Pulley*, 863 S.W.2d at 34 (quoting *United States v. Mendenhall*, 446 U.S. 544, 561 (1980) (Powell, J., concurring)). The objective facts upon which the officer relied may include, but are not limited to, the officer's observations, information received from fellow officers, information received from citizens, and the "pattern of operation of certain offenders." *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). "As a general rule . . . the stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred. *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997) (citing *Whren v. United States*, 517 U.S. 806 (1996)).

The record reflects Officer Brantley's testimony that he observed the Defendant turning slowly and stopping short of a stop sign and that according to Officer Brantley's training, these were indicators of impairment. Officer Brantley also testified, and the police cruiser video recording reflected, that the Defendant failed to drive upon the right half of the roadway, which was a traffic violation. *See* T.C.A. § 55-8-115. The trial court noted the Defendant's driving "that far over" on the left side of the road and the absence of cars parked on the right side of the road. Officer Brantley's observations gave rise to specific, articulable grounds for reasonable suspicion that the Defendant was driving while under the influence. In addition, Officer Brantley had probable cause to conduct a stop based upon a traffic violation. The evidence does not preponderate against the trial court's finding that the stop was supported by probable cause. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE